**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Healogics Incorporated,<br><br>          Plaintiff,<br><br>v.<br><br>Patrick Mayfield, *et al.*,<br><br>          Defendants. | No. CV-20-01568-PHX-JJT<br><br>**ORDER** |

At issue is Defendants' Motion for Summary Judgment (Doc. 36, DMSJ)[1], to which Plaintiff filed a Response (Doc. 38) and Defendants filed a Reply (Doc. 48); and Plaintiff's Motion for Summary Judgment (Doc. 40, PMSJ), supported by Plaintiff's Statement of Facts (Doc. 41, PSOF), to which Defendants filed a Response (Doc. 46) and Plaintiff filed a Reply (Doc. 49). The Court finds these matters appropriate for resolution without oral argument. LRCiv 7.2(f). For the reasons that follow, the Court grants in part and denies in part Plaintiff's Motion and grants in part and denies in part Defendants' Motion.

**I.   BACKGROUND**

Plaintiff Healogics, Inc. ("Healogics") alleges claims under the Employee Retirement Income Security Act of 1974 ("ERISA") against Defendants Patrick and Sondra Mayfield. It seeks reimbursement of $101,325.02 in benefits it paid on behalf of Mr. Mayfield in relation to a settlement obtained by Defendants from third parties in a medical malpractice claim.

---

[1] Defendants did not submit a separate Statement of Facts to support their Motion for Summary Judgment – a violation of Local Rule 56.1.

**A.     The Healogics, Inc., Self-Fund Health Benefit Plan**

Healogics's Employee Benefit Plan ("the Plan") was first established in 2002 by a predecessor company. (PSOF ¶¶ 2-3.) According to Defendants, in 2007, Aetna was named as the claim administrator for the Plan and remained the claim administrator through 2017. (Doc. 36 at 2.) In 2013, Plaintiff alleges and Defendants dispute, the Plan sponsor adopted an Amended and Restated Plan Document (the "2013 Plan").[2] (PSOF ¶ 2.) The 2013 Plan contains provisions for amending the Plan, incorporating other documents ("Component Plans") into the Plan, and repaying the Plan if the Plan participant receives an overpayment for medical expenses. (PSOF Ex. 2.) Specifically, paragraph 3.12 of the 2013 Plan provides for Recovery of Overpayment:

> Any amount paid to any person in excess of the amount to which he is entitled under the Plan will be repaid to the Plan or, if applicable, the Insurer, promptly following receipt by the person of a notice of such excess payments. In the event such repayment is not made, such repayment may be made, at the discretion of Diversified Clinical Services or, if applicable, the Insurer, by reducing or suspending any further payments due under the Plan to the person and by taking such other or additional action as may be permitted by applicable law.

(PSOF Ex. 2 at 5.)

Plaintiff alleges and Defendants dispute that one of the Component Plans incorporated in 2017 as part of the 2013 Plan was a benefit booklet ("Benefit Booklet") prepared by Aetna. (PSOF ¶ 12.) The Benefit Booklet contains its own reimbursement provision ("Reimbursement Provision"), which is a sub-provision under a larger Subrogation and Right of Recovery Provision in the Benefit Booklet, that states:

> **Reimbursement**
> If you receive any payment as a result of an injury, illness or condition, you agree to reimburse the plan first from such payment for all amounts the plan has paid and will pay as a result of that injury, illness or condition, up to and including the full amount of your recovery.

(PSOF Ex. 4 at 64 (emphasis omitted).)

---

[2] In 2013 the Plan sponsor was Diversified Clinical Services. Following a merger, the name of the Plan was changed and Healogics became the Plan administrator. (DMSJ at 2.)

- 2 -

The Benefit Booklet also contains an "Applicability to All Settlements" provision, a separate clause under the larger Subrogation and Right of Recovery Provision, that states:

> **Applicability to All Settlements and Judgments**
>
> The terms of this entire subrogation and right of recovery provision shall apply and the plan is entitled to full recovery regardless of whether any liability for payment is admitted and regardless of whether the settlement or judgment identifies the medical benefits the plan provided or purports to allocate any portion of such settlement or judgment to payment of expenses other than medical expenses. The plan is entitled to recover from any and all settlements or judgments, even those designated as pain and suffering, non-economic damages, and/or general damages only. The plan's claim will not be reduced due to your own negligence.

(PSOF Ex. 4 at 64 (emphasis omitted).)

### B.  Defendant Patrick Mayfield's 2017 Injuries

On January 17, 2017, Patrick Mayfield sustained injuries resulting from the negligence and willful misconduct of Jamison Foster, D.O. and Affiliated Southwest Surgeons. (Doc. 16, ¶ 15.) Dr. Foster, who was under the influence of opioids while operating on Mr. Mayfield's gallbladder, mistakenly cut Mr. Mayfield's bile duct, injuring Mr. Mayfield significantly. (Doc. 49, Ex. A at 2-3.) At the time of treatment, Mr. Mayfield was a covered person as defined in the Aetna Medical Benefits Plan. (Doc. 16, ¶¶ 7,17.) As a result of the injuries sustained by Mr. Mayfield, Aetna Insurance Company made payments totaling $101,325.02 to medical providers. (Doc. 1, ¶ 19; Doc. 52, ¶¶ 2–3.)

Defendants sued Dr. Foster and Affiliated Southwest Surgeons for their negligent and willful misconduct and received a settlement payment to resolve the dispute. (Doc.16, ¶ 31.) Healogics seeks reimbursement of its $101,325.02 expenditure to medical providers from the settlement amount recovered by Defendants in their lawsuit against Dr. Forster and Affiliated Southwest Surgeons. (Doc. 1.)

## II.  LEGAL STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate when: (1) the movant shows that there is no genuine dispute as to any material

- 3 -

fact; and (2) after viewing the evidence most favorably to the non-moving party, the movant is entitled to prevail as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Eisenberg v. Ins. Co. of N. Am.*, 815 F.2d 1285, 1288-89 (9th Cir. 1987). Under this standard, "[o]nly disputes over facts that might affect the outcome of the suit under governing [substantive] law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine issue" of material fact arises only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.*

In considering a motion for summary judgment, the Court must regard as true the non-moving party's evidence if it is supported by affidavits or other evidentiary material. *Celotex*, 477 U.S. at 324; *Eisenberg*, 815 F.2d at 1289. The non-moving party may not merely rest on its pleadings; it must produce some significant probative evidence tending to contradict the moving party's allegations, thereby creating a material question of fact. *Anderson*, 477 U.S. at 256-57 (holding that the plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment); *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968).

"A summary judgment motion cannot be defeated by relying solely on conclusory allegations unsupported by factual data." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). "Summary judgment must be entered 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *United States v. Carter*, 906 F.2d 1375, 1376 (9th Cir. 1990) (quoting *Celotex*, 477 U.S. at 322).

**III. ANALYSIS**

    **A. The Plan Documents**

Both parties agree Healogics, as Plan administrator and fiduciary, is the proper party to bring an enforcement action under, ERISA, 29 U.S.C. § 1132(a)(3) and that an equitable lien against an identifiable fund is a type of relief authorized by § 1132(a)(3). (Doc. 46, at 2.) Thus, to resolve this litigation, the Court first must determine what documents govern

Healogics's ERISA plan. ERISA requires that every employee benefit plan be established and maintained pursuant to a written instrument that includes "(1) a procedure for establishing and carrying out a funding policy, (2) the procedure for the allocation of responsibilities for operation and administration of the plan, (3) a procedure for amending the plan and the identity of persons with the authority to do so, and (4) the basis on which payments are made to and from the plan." *Mull for Mull v. Motion Picture Indus. Health Plan*, 865 F.3d 1207, 1209 (9th Cir. 2017) (citing 29 U.S.C. § 1102(b)).

The parties disagree as to which documents establish Healogics's Plan. Plaintiff argues the governing plan consists of multiple documents, two of which are at issue in this case: the 2013 Plan and the Benefit Booklet. Plaintiff argues the combination of both documents satisfies all four requirements prescribed by 29 U.S.C. § 1102(b).

Defendants do not contest that a valid ERISA plan exists but challenge whether the 2013 Plan and Benefit Booklet are part of the Plan. Defendants claim the 2013 Plan is invalid because there is no evidence the document was adopted by Healogics or its predecessor in interest. (Doc. 47, ¶ 2.) The Benefit Booklet is invalid, Defendants urge, because the booklet is not identified as a part of the governing plan document or, if the 2013 Plan is found to be the governing plan document, because the booklet was not properly adopted according to the amendment procedures in the 2013 Plan. (DMSJ at 11-12.) In the alternative, Defendants argue if the Benefit Booklet is properly adopted by the 2013 Plan, the Reimbursement Provision of the Benefit Booklet was not incorporated into the Plan. (DMSJ at 15-16.)

The Court first turns to the 2013 Plan and determine whether it is a plan document.

### 1.   *There is a Genuine Dispute of Fact as to Whether the 2013 Plan Was a Valid Amendment to the Plan*

Defendants argue the 2013 Plan is invalid because Plaintiff cannot prove the 2013 Plan was properly ratified/amended to the Plan. Section 402(b)(3) of ERISA requires that

every employee benefit plan provide "a procedure for amending such plan, and for identifying the persons who have authority to amend the plan."

> The text of § 402(b)(3) actually requires two things: a 'procedure for amending [the] plan' and '[a procedure] for identifying the persons who have authority to amend the plan.' With respect to the second requirement, the general 'Definitions' section of ERISA makes quite clear that the term 'person,' wherever it appears in the statute, includes companies…. The text of § 402(b)(3) speaks, somewhat awkwardly, of requiring a *procedure* for identifying the persons with amendment authority, rather than requiring identification of those persons outright….[T]he literal terms of § 402(b)(3) are ultimately indifferent to the level of detail in an amendment procedure…. The provision requires only that there be an amendment procedure.

*Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 78–80 (1995)(emphasis included in original).

Defendants suggest Plaintiff has failed to follow any procedure to ratify the 2013 Plan. To support their claim, Defendants argue Plaintiff only produced an unsigned draft of the 2013 Plan and failed to produce any other evidence, such as action by the Board of Directors or corporate officers, to show that the 2013 Plan was ever adopted by the company or its predecessor in interest. (Doc. 46, at 3.)

Plaintiff points to the affidavit and deposition testimony of Mr. Chris A. Meyers, Healogics Chief Human Resource Officer ("CHRO"), stating, despite having no personal knowledge or involvement with creating or incorporating the 2013 Plan as a governing plan document, that the 2013 Plan was properly adopted by Diversified Clinical Services. (PSOF ¶ 1.) Defendants allege the relevant portions of Mr. Meyers's affidavit and deposition contain hearsay and thus cannot be used to defeat Defendants' Motion for Summary Judgment. (DMSJ at 4.)

The Ninth Circuit applies a double standard to the admissibility requirement for evidence at the summary judgment stage. *Walters v. Odyssey Healthcare Mgmt. Long Term Disability Plan*, No. CV-11-00150-PHX-JAT, 2014 WL 4371284, at *3 (D. Ariz. Sept. 4, 2014), aff'd, 670 F. App'x 956 (9th Cir. 2016). "With respect to the non-movant's evidence offered in opposition to a motion for summary judgment, the Ninth Circuit has stated that

- 6 -

the proper inquiry is not 'the admissibility of the evidence's form' but rather whether the contents of the evidence are admissible….The Ninth Circuit has required, however, that evidence offered in support of a motion for summary judgment be admissible both in form and in content." *Walters*, 2014 WL 4371284 at *4 (quoting *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir.2003)). In the present case, Plaintiff offers Mr. Meyers's affidavit and deposition testimony to respond to Defendants' Motion for Summary Judgment. Accordingly, even if it is hearsay, Plaintiff's evidence can and does raise a genuine issue of material fact.

In both Mr. Meyers's affidavit and deposition testimony, Mr. Meyers states the Plan was amended in 2013. (PSOF ¶ 1.) In considering a motion for summary judgment, the Court must regard as true the non-moving party's evidence if it is supported by affidavits or other evidentiary material. *Celotex*, 477 U.S. at 324; *Eisenberg*, 815 F.2d at 1289. Accordingly, the Court considers Mr. Meyers's statements as true and holds it as sufficient probative evidence to contradict Defendants' assertion that the 2013 Plan was not adopted. Accordingly, there is a genuine dispute as to whether the 2013 Plan was ratified.

Plaintiff also relies on Mr. Meyers's affidavit and deposition testimony as the sole evidence in its Motion for Summary Judgment that the 2013 Plan was adopted.[3] (Doc. 49, at 3.) For the reasons stated previously, Defendants raise a genuine dispute whether the 2013 Plan is a plan document.[4]

For the forgoing reasons the Court concludes there is a genuine dispute whether the 2013 Plan is a plan document.

---

[3] Plaintiff, within two footnotes of its Reply, also argues that Defendants are estopped from refuting the validity of the 2013 Plan, because Defendants do not dispute the Plan changed its name in 2017, Healogics became the Plan administrator, the Plan assets were transferred to Healogics, and the benefits provided on behalf of Mr. Mayfield were paid from the assets of Healogics. (Doc. 49, at 3-4.) Section 514(a) provides that ERISA "shall supersede any and all State laws insofar as they ... relate to any employee benefit plan" covered by the statute. 29 U.S.C. § 1144(a). The Ninth Circuit has read the words "relates to" expansively, holding state law claims of estoppel and quasi-estoppel are preempted by ERISA. *Crull v. GEM Ins. Co.*, 58 F.3d 1386, 1390 (9th Cir. 1995).

[4] As stated earlier in the Order, inadmissible evidence may not be offered in support of a motion for summary judgment. *Walters*, 2014 WL 4371284 at *4. The Court need not rule on whether Mr. Meyers's testimony is hearsay since it already finds there is a genuine issue of material fact as to the adoption of the 2013 Plan.

### 2. There is a Genuine Dispute of Fact Whether the Benefit Booklet is a Plan Document

The parties also disagree as to whether the Benefit Booklet is a plan document. Plaintiff argues the Benefit Booklet is a part of the Plan as section 1.4 of the 2013 Plan makes clear that multiple documents together comprise the entirety of the Plan. (Doc. 38, at 3-5.) Section 1.4 states:

> **1.4 The Plan**
> The complete terms and conditions of the Plan are contained in the insurance policies purchased by Diversified Clinical Services on behalf of its employees and the self-insured plan documents (Component Plans). These policies and self-insured plan documents when taken with this Plan document constitute the entire Plan which is intended to conform to the written plan requirements under Section 402 of ERISA.

(PSOF Ex. 2 at 1.) Section 1.4 thus includes Component Plans as a part of the Plan documents. What is unclear is if or how the 2017 Benefit Booklet became a part of the Plan. Plaintiff contends the Benefit Booklet is not an amendment to the Plan but instead "an update to the health benefit package offered as part of the Plan." (Doc. 49, at 4.) As a result, Plaintiff urges, adopting the booklet is within the discretionary authority the Plan delegates to Aetna. *Id*. To support its theory, Plaintiff points to five clauses of the 2013 Plan which it purports gives Healogics or its agent discretion to incorporate the Benefit Booklet without amendment. *Id*. The Court will analyze each clause.

The first clause Plaintiff cites states that the Plan sponsor and Plan administrator "shall have the duty and authority to interpret and construe the Plan with regard to all questions of eligibility, the status and rights of any person under the Plan, and the manner, time, and amount of payment of any benefits under the Plan." *Id*. But the Reimbursement Provision Plaintiff seeks to enforce is not an interpretation of an existing rule within the Plan; it is instead an entirely new provision. The Plan itself does not contemplate reimbursement from all settlement proceeds obtained by the insured; it only considers recoupment of excess medical payments paid by the Plan. (PSOF Ex. 2 at 5.) The Benefit Booklet's Reimbursement Provision drafts a new rule to the Plan; it does not interpret or

construe an existing rule. This clause cannot be the source of authority for Healogics to change the Plan without amendment.

The second clause Plaintiff cites states Healogics "may adopt such rules and procedures, as it deems desirable for the administration of the Plan, provided that any such rules and procedures shall be consistent with provisions of the Plan and ERISA." (Doc. 49, at 4.) Rules and procedures inform how an existing plan term should be administrated. *Curtiss-Wright*, 514 U.S. at 80 (A "procedure," as that term is commonly understood, is a "particular way" of doing something, Webster's Third New International Dictionary 1807 (1976), or "a manner of proceeding," Random House Dictionary of the English Language 1542 (2d ed.1987).). Again, the Reimbursement Provision is not a rule or procedure but instead an actual term governing the Plan. Further, this clause states the rules and procedures "shall be consistent with the provisions of the Plan." (Doc. 49, at 4.) As stated earlier, the Plan does not contemplate reimbursement against all third-party settlement payments. (PSOF Ex. 2 at 5.) The 2013 Plan only requires repayment of excess medical proceeds received by the Plan participant. The Reimbursement Provision is not consistent with the existing plan terms but instead expands the Plan's terms. This clause also cannot be the source of authority to change the Plan without amendment.

The third clause Plaintiff cites states Healogics is permitted to "employ such counsel and agents and may arrange for such clerical and other service as it may require in carrying out the provisions of the Plan." (Doc. 49, at 4.) The court agrees Plaintiff can employ agents to carry out Plan provisions for itself. The provisions that Plaintiff's agents are authorized to carry out are existing provisions in the Plan. But adding a new provision, such as the Reimbursement Provision, falls outside the authority granted by this clause.

The fourth clause Plaintiff cites states, "[Healogics] may from time to time prescribe the terms, conditions and procedure under which a Plan participant may modify or terminate coverage under the Plan or under one or more Component Plans." *Id*. This clause pertains to procedures *Mr. Mayfield* could use to modify or terminate his coverage under

one or more of the Component Plans.[5] This does not give Healogics's agents the authority to draft new provisions on behalf of the Plan.

The fifth clause Plaintiff cites states, "the applicable benefits and coverage options under the Component Plans are set forth in the Summary Plan Descriptions or Evidence of Coverage for each such plan. The availability of coverage options will be determined by [Healogics] from time to time and may differ among groups of participants on the basis of any factors determined by [Healogics] in its discretion." *Id*. A plain reading of this clause affords discretion to Healogics for allowing different coverage options among different group participants. To construe this provision as broadly as Plaintiff suggests – that is, to give Aetna the ability to change the substantive terms of the Plan *carte blanche* – would nullify the amendment procedure stated in the Plan and required by ERISA.

None of the clauses Plaintiff has identified allow Aetna or Healogics to draft substantive provisions in the Plan without an amendment. *See King, Jr. Cmty. Hosp. v. Cmty. Ins. Co.*, No. 216CV03722ODWRAOX, 2018 WL 3830009, at *3 (C.D. Cal. July 5, 2018), aff'd sub nom. *King v. Cmty. Ins. Co.*, 829 F. App'x 156 (9th Cir. 2020) (hereinafter "*King I*")(it is appropriate to shift "the risks of unapproved plan amendments or technically invalid plan documents from the beneficiaries to the plan sponsors and administrators who are required to follow those provisions and are in the best position to address any deficiencies"). Accordingly, to incorporate the Benefit Booklet, the plan must be amended. (PSOF Ex. 2 at 1); *see also* 29 U.S.C. § 1104(a) (imposing an obligation on fiduciaries to follow plan documents).

The Benefit Booklet states its effective date was January 1, 2017 and its Issue date was April 12, 2017. (PSOF Ex. 4 at 1.) Thus, prior to January 1, 2017, the Benefit Booklet was not a plan document. To become a plan document, the Benefit Booklet would have to

---

[5] By comparing the phrase "Plan participant" as it is used in the fourth clause Plaintiff cites with how it is used in other clauses within the 2013 Plan, it is clear the term references beneficiaries participating in the plan. For example, the section of the 2013 Plan entitled, "4.2 Coverage for Dependents Up to Age 26," provides that "Group health plans must make dependent coverage to adult children available until they turn age 26. The mandate applies to any adult child whether or not he or she is eligible to enroll in some other employer-sponsored group health plan. Adult children shall include those who are a child of the Plan participant…" (PSOF Ex. 2 at 7.)

- 10 -

have been adopted by amendment to the Plan. The 2013 Plan itself is an alleged amendment to the original Plan documents. That document clearly states on its title page "Originally Effective October 1, 2002 Amended and Restated as of February 1, 2013."[6] (PSOF Ex. 2 Title Page.) Healogics has not provided any similar documentation showing it approved or ratified the terms of the Benefit Booklet as part of the Plan. The only evidence in the record that the Benefit Booklet was approved is the following testimony of Healogics's current CHRO:

> Q: Who at Healogics approve[d] the 2017 Aetna Benefit Plan document?
> A: I can't give you everybody – all the specifics. I can tell you the current process is myself and the Chief Human Resources Officer. If anybody in finance – if it had financial ramifications, they would be a part of the approval process and then we would approve it in conversations with Marsh and McLennan. Based on my conversations with Marsh and McLennan, that process has not changed. That process is the same process that's been done in the past.

(PSOF Ex. 1 at 26.)

The record includes a copy of Aetna's 2013 benefit booklet and portions of the 2016 benefit booklet. Applying Plaintiff's argument regarding the 2017 Benefit Booklet analogously to the 2013 and 2016 benefit booklet would make the 2013 and 2016 benefit booklets Component Plans and thereby governing plan documents for the year 2013 and 2016, respectively. The 2013 benefit booklet includes a procedure for amending the Plan that states, "Procedure for Amending the Plan: The Employer may amend the Plan from time to time by a written instrument signed by the Vice President of Human Resources." (Doc. 39, Ex. 7 at 95.) The 2016 benefit booklet includes a provision for amending the Plan which states "The Employer may amend the Plan from time to time by a written instrument signed by the Plan administrator." (Doc. 47, Ex. 8 at 100.) The lack of documentation supporting ratification of the 2017 Benefit Booklet, coupled with the Plan's past practice of acknowledging documents as amendments, as the Plan did with the 2013 Plan and states in the 2013 and 2016 benefit booklets, is sufficient probative evidence to contradict

---

[6] As discussed in II.A.1. it is an open question whether the 2013 Plan is ratified or a draft circulated pre-ratification.

- 11 -

Healogics assertion that the 2017 Benefit Booklet was incorporated into the Plan. Accordingly, there is a genuine dispute whether the terms in the 2017 Benefit Booklet were ratified.

### 3. *If the Benefit Booklet is Properly Adopted as a Plan Document, the Reimbursement Provision is Part of the Plan*

Defendants claim even if the Benefit Booklet is a governing document, the Reimbursement Provision would not be included as part of the Plan. Once again, the 2013 Plan states:

> **1.4 The Plan**
>
> The complete terms and conditions of the Plan are contained in the insurance policies purchased by Diversified Clinical Services on behalf of its employees and the self-insured plan documents (Component Plans). These policies and self-insured plan documents when taken with this Plan document constitute the entire Plan which is intended to conform to the written plan requirements under Section 402 of ERISA.

(PSOF Ex. 2 at 1.)

Section 1.4 of the 2013 Plan does not limit which provisions of the Component Plans are incorporated in Healogics's ERISA plan. Instead, the 2013 Plan says all provisions in the Component Plans create the "complete terms and conditions of the Plan." *Id.* Accordingly, if the Benefit Booklet was properly adopted as part of the Plan, Defendants were on notice that all the terms in the Benefit Booklet were a part of the Plan including the Reimbursement Provision.

### 4. *If the Benefit Booklet is not a Plan Document, the Reimbursement Provision is not Part of the Plan Document*

Even if the Benefit Booklet was not properly adopted, the trier of fact still could conclude provisions of the booklet are included in the Plan in limited circumstances. In *CIGNA Corp. v. Amara*, 563 U.S. 421, 438, (2011), the Supreme Court held that "summary documents, important as they are, provide communication with beneficiaries about the plan, but that their statements do not themselves constitute the terms of the plan for purposes of [ERISA] § 502(a)(1)(B)." *See also US Airways, Inc. v. McCutchen*, 569 U.S.

- 12 -

88, (2013) ("We have made clear that the statements in a summary plan description [('SPD')] 'communicate with beneficiaries about the plan, but do not themselves constitute the terms of the plan.'" (alterations omitted) (quoting *Amara*, 563 U.S. at 438)). The Ninth Circuit clarified that "*Amara* addressed only the circumstance where both a governing plan document and an SPD existed, and the plan administrator sought to enforce the SPD's terms over those of the plan document. It did not address the situation ... that a plan administrator seeks to enforce the SPD as the one and only formal plan document." *Prichard v. Metro. Life Ins. Co.*, 783 F.3d 1166, 1170 (9th Cir. 2015). Consequently, "an SPD may constitute a formal plan document, consistent with *Amara*, so long as the SPD neither adds to nor contradicts the terms of existing Plan documents." *Id.*; *see also Eugene S. v. Horizon Blue Cross Blue Shield of N.J.*, 663 F.3d 1124, 1131 (10th Cir. 2011) ("We interpret *Amara* as presenting either of two fairly simple propositions, given the factual context of that case: (1) the terms of the SPD are not enforceable when they conflict with governing plan documents, or (2) the SPD cannot create terms that are not also authorized by, or reflected in, governing plan documents."). The Ninth Circuit applied these narrow principles in *Mull* and *King v. Cmty. Ins. Co.*, 829 F. App'x 156, 157 (9th Cir. 2020) (unpublished)(hereinafter "*King II*").

Our sister court in the Central District of California summarizes the question in *Mull* as follows:

> The question in [*Mull*] was whether a reimbursement/recoupment provision in the plan's SPD was incorporated into the plan documents. The parties agreed that the Trust Agreement was a plan document, and the Trust Agreement, last amended in 2010, stated that the Board "shall" adopt a resolution specifying the benefits of the plan. Although the SPD had been approved by the board of directors, Plaintiff argued that the SPD could not be a plan document because it had been approved in 2007, while the Trust Agreement in 2010 specified that the board must adopt this resolution at some point in the future….The Trust Agreement met three of ERISA's requirements for a plan instrument, but lacked any provisions regarding the basis on which payments were made to and from the plan.

*King I*, 2018 WL 3830009, at *3.

With this factual background, *Mull* narrowly incorporated the SPD (including the reimbursement/recoupment provision) because it specified the basis on which payments were made to and from the plan. *Id.* at 1209-10. In *King II* the plan sponsor drafted the SPD and incorporated the plan administrator's plan benefit booklets in a restricted capacity. 829 F. App'x at 160. The SPD in *King II* stated that "[p]lan booklets provided by the insurance company ... describe[ ] the healthcare or other welfare benefits, and the terms and conditions for receiving those benefits." *Id*. at 161. The court held the booklet's "anti-assignment provision is plainly not a benefit," and thus the plan sponsor's SPD did not incorporate it into the plan document. *Id*.

The Court views the present case as a direct application of *Prichard, Mull,* and *King*. In its Reply, Plaintiff clarifies the Benefit Booklet "is not an amendment to the Plan itself. It is an update to the health benefit package offered as part of the Plan." (Doc. 49, at 4.) Like the plan in *King II*, the provisions of the Benefit Booklet that would be included as plan documents, if any portion is included at all, would be limited to provisions that related to the "health and benefit package offered as a part of the Plan." *Id.* Accordingly, the terms and conditions related to the health and benefit packages offered would be included as part of the Plan.

Unlike an assignment provision, reimbursement directly relates to the terms and conditions of receiving benefits from the Plan. *Prichard* limits incorporating external documents to the extent they neither add to nor contradict the terms of existing plan documents. 783 F.3d at 1170. The 2013 Plan already contains provisions related to the recovery of overpaid funds. (PSOF Ex. 2 at 5.) Specifically, once again, the 2013 Plan states:

> **3.12 Recovery of Overpayment**
> Any amount paid to any person in excess of the amount to which he is entitled under the Plan will be repaid to the Plan or, if applicable, the Insurer, promptly following receipt by the person of a notice of such excess payments. In the event such repayment is not made, such repayment may be made, at the discretion of Diversified Clinical Services or, if applicable, the Insurer, by reducing or suspending any further payments due under the Plan

> to the person and by taking such other or additional action as may be permitted by applicable law.

(PSOF Ex. 2 at 5.) Accordingly, the 2013 Plan only requires repayment of excess medical proceeds received by the Plan participant.

By contrast, the Reimbursement Provision, which is a sub-provision under a larger Subrogation and Right of Recovery Provision in the Benefit Booklet, states:

> If you receive any payment as a result of an injury, illness or condition, you agree to reimburse the plan first from such payment for all amounts the plan has paid and will pay as a result of that injury, illness or condition, up to and including the full amount of your recovery.

(PSOF Ex. 4 at 64 (emphasis omitted).) The Reimbursement Provision expands the Plan participant's repayment obligation. Under the Benefit Booklet's Reimbursement Provision, the Plan participant must repay all the Plan has paid and will pay from any amount of recovery the Plan participant collects, and not just what the Plan participant collects from third parties for medical costs. (*See* PSOF Ex. 4 at 64.) Because the Reimbursement Provision in the Benefit Booklet expands the terms of the existing Plan, it would not be incorporated. *See Prichard* 783 F.3d at 1170 (limiting the incorporation of external documents if they add to or contradict the terms of existing plan documents).

**B.   Mr. Mayfield's Surgery is Included Within the Language of the Reimbursement Provision**

Defendants also argue that, should the Reimbursement Provision be included in the Plan, Mr. Mayfield's surgery is not included within the language of the Reimbursement Provision. (Doc. 46, at 8-10.) Again, the Reimbursement Provision states:

> If you receive any payment as a result of an injury, illness or condition, you agree to reimburse the plan first from such payment for all amounts the plan has paid and will pay as a result of that injury, illness or condition, up to and including the full amount of your recovery.

(PSOF Ex. 4 at 64 (emphasis omitted).)

The Court first considers whether Mr. Mayfield's circumstances are a condition covered under the provision. Unlike injury and illness, the Benefit Booklet does not define

- 15 -

the word "condition." In interpreting an ERISA plan, the Court examines the plan documents and, if unambiguous, construes them as a matter of law. *Chiles v. Ceridian Corp.*, 95 F.3d 1505, 1511 (10th Cir. 1996). The Court does not find the definition of "condition" ambiguous. A "condition" is understood to mean "a state of being" or "the particular state that something or someone is in" *See* https://www.merriam-webster.com/dictionary/condition (defining condition as a "state of being); https://dictionary.cambridge.org/us/dictionary/english/condition) (defining condition as "the particular state that something or someone is in"). The payments made by Healogics on behalf of Mr. Mayfield directly resulted from the "state of being" that Mr. Mayfield was in after a surgeon mistakenly cut his bile duct during a gallbladder operation. (Doc. 49, Ex. A at 2-3.) Accordingly, Mr. Mayfield's surgery is included within the language of the Reimbursement Provision.

**C.    The Reimbursement Provision Entitles Healogics to Recovery from Any Payment Mr. Mayfield Received as a Result of His Condition**

Should the Reimbursement Provision apply, Defendants argue Healogics's claim would be limited to the medical reimbursements Mr. Mayfield has received from settling his malpractice lawsuit. (Doc. 46, at 11.) For its part, Plaintiff argues the Plan is entitled to all amounts the Plan has paid. (Doc. 49, at 9.) The Reimbursement Provision states, "If you receive any payment as a result of an injury, illness or condition, you agree to reimburse the plan first from such payment for all amounts the plan has paid." (PSOF Ex. 4 at 64 (emphasis omitted).) The plain language of the provision makes clear the pool of funds the Plan is entitled to are "any" payments to the Plan participant by a third-party "as a result" of the Plan participant's "injury, illness or condition." Accordingly, Healogics is entitled to recover from any pool of money the Plan participant collects from a third-party as a result of his injury.

Further, the "Applicability to All Settlements" provision, a separate provision under the larger Subrogation and Right of Recovery Provision in the Plan, underscores the breadth of Healogics's claims. It states:

- 16 -

> **Applicability to All Settlements**
> The terms of this entire subrogation and right of recovery provision shall apply and the plan is entitled to full recovery regardless of whether any liability for payment is admitted and regardless of whether the settlement or judgment identifies the medical benefits the plan provided or purports to allocate any portion of such settlement or judgment to payment of expenses other than medical expenses. The plan is entitled to recover from any and all settlement or judgments, even those designated as pain and suffering, non-economic damages, and/or general damages only. The plan's claim will not be reduced due to your own negligence.

(PSOF Ex. 4 at 64 (emphasis omitted).)

Should the Benefit Booklet be a Plan document, the Plan language clearly entitles Healogics to full payment regardless of whether the settlement Defendant received attributes a limited portion to medical costs.

### D.    Attorney's Fees

In its Motion, Plaintiff requested attorney's fees if the Court rules in favor of Plaintiff's Motion for Summary Judgment. Since the Court has denied parts of Plaintiff's Motion for Summary Judgment, the request for attorney's fees is denied at this stage.

### E.    Conclusions

In sum, there is a genuine dispute of material fact whether the 2013 Plan was properly ratified as an amendment to Healogics's ERISA Plan. There is also a genuine dispute of material fact whether the 2017 Benefit Booklet was properly made an amendment to Healogics's ERISA Plan. Accordingly, both issues will proceed to trial.

If the 2017 Benefit Booklet was properly amended to the Plan, the Reimbursement Provision is also part of Healogics's ERISA plan and Plaintiff is entitled to recover from any payment Mr. Mayfield received as a result of his condition. If the 2017 Benefit Booklet was not properly amended to the Plan, the Reimbursement Provision is not part of Healogics's ERISA plan and Healogics can only recover for any overpayment Mr. Mayfield has received for his medical expenses.

Lastly, Healogics is not entitled to attorney's fees at this time.

**IT IS THEREFORE ORDERED** granting in part and denying in part Plaintiff's Motion for Summary Judgment (Doc. 40).

**IT IS FURTHER ORDERED** granting in part and denying in part Defendants' Motion for Summary Judgment (Doc. 36).

**IT IS FURTHER ORDERED** that the Court will set a Pretrial Conference by separate Order.

Dated this 3rd day of November, 2021.

Honorable John J. Tuchi
United States District Judge